UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT HUTCHENSON,<br><br>        Plaintiff,<br><br>    v.<br><br>STEIN MART, INC., JAY STEIN, D. HUNT HAWKINS, MARYANN MORIN, IRWIN COHEN, THOMAS L. COLE, TIMOTHY COST, LISA GALANTI, RICHARD L. SISISKY, and BURTON M. TANSKY,<br><br>        Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1. This action concerns a proposed transaction announced on January 31, 2020, pursuant to which Stein Mart, Inc. ("Stein Mart" or the "Company") will be acquired by Stratosphere Holdco, LLC an affiliate of Kingswood Capital Management, L.P. ("Kingswood").

2. On January 30, 2020, Stein Mart's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Stein Mart's stockholders will receive $0.90 per share in cash for each share of common stock they own (the "Proposed Transaction").

3. On March 2, 2020, in order to convince Stein Mart's stockholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading preliminary proxy statement (the "Proxy") with the United States Securities and

Exchange Commission ("SEC").

4. The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5. In addition, Stein Mart stockholders will soon be required to vote on the Proposed Transaction at a special meeting (the "Stockholder Vote") without the benefit of the material information. It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Stein Mart stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Stein Mart common stock.

10. Defendant Stein Mart is a Florida corporation and a party to the Merger Agreement. Stein Mart common stock is traded on the NASDAQ under the ticker symbol "SMRT."

11. Defendant Jay Stein is Chairman of the Board of the Company.

12. Defendant D. Hunt Hawkins is Chief Executive Officer and a director of the Company.

13. Defendant MaryAnn Morin is President and a director of the Company.

14. Defendant Irwin Cohen is a director of the Company and a member of the special committee of the Board (the "Special Committee").

15. Defendant Thomas L. Cole is a director of the Company and a member of the Special Committee.

16. Defendant Timothy Cost is a director of the Company and a member of the Special Committee.

17. Defendant Lisa Galanti is a director of the Company.

18. Defendant Richard L. Sisisky is a director of the Company and Chairman of the Special Committee.

19. Defendant Burton M. Tansky is a director of the Company.

**FACTS**

20.     Stein Mart is a national specialty off-price retailer offering designer and name-brand fashion apparel for him, for her and kids, home décor, accessories and shoes at everyday discount prices.  The Company operates 283 stores across 30 states.

21.     On January 30, 2020, Stein Mart's Board caused the Company to enter into the Merger Agreement.

22.     Pursuant to the terms of the Merger Agreement, Stein Mart's stockholders will receive $0.90 in cash for each share of Stein Mart common stock they own in an all-cash merger.

23.     The Merger Agreement further provides that Stein Mart has agreed with Stratosphere Holdco, LLC, a Delaware limited liability company ("Stratosphere"), Stratosphere Merger Sub, Inc., a Florida corporation and an indirect wholly-owned subsidiary of Stratosphere ("Merger Sub").  Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, Merger Sub will be merged with and into the Company, with the Company surviving as a wholly-owned subsidiary of Stratosphere (the "Merger").

24.      At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> Each share of Common Stock [of the Company] issued and outstanding immediately before the Effective Time (other than Excluded Shares and Dissenting Shares) shall be converted into the right to receive $0.90 in cash, without interest (the "***Merger Consideration***").

25.     The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

26.     It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

27.     Section 5.4 of the Merger Agreement provides for a "no solicitation" clause that prevents Stein Mart from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

> (a)   From the date of this Agreement until the earlier of the Effective Time or the termination of this Agreement pursuant to Article VII hereof, and except as expressly permitted by the other provisions of this Section 5.4, the Company shall not, and the Company shall cause any of its Subsidiaries not to, and the Company shall use its commercially reasonable efforts to cause its Representatives acting on its behalf not to, directly or indirectly, (i) solicit, initiate, induce the making of, knowingly facilitate or knowingly encourage (including by way of furnishing or providing access to any non-public information) any inquiries regarding, or the making of any proposal or offer that constitutes or could reasonably be expected to lead to, a Takeover Proposal, (ii) enter into or participate in any discussions or negotiations with any Person regarding a Takeover Proposal (other than to state that the Company is not permitted to have discussions or negotiations), (iii) approve or recommend, or propose to approve or recommend, or execute or enter into any letter of intent, memorandum of understanding or Contract with respect to, a Takeover Proposal or that would require the Company to abandon or terminate this Agreement or fail to consummate the Merger (other than an Acceptable Confidentiality Agreement), (iv) waive the applicability of all or any portion of any anti-takeover Laws in respect of any Person (other than Parent, Merger Sub and their Affiliates), or (v) modify, waive, amend, release or fail to enforce any existing standstill obligations owed by any Person to the Company or any of its Subsidiaries. The Company shall immediately cease and cause to be terminated any solicitation, encouragement, discussion or negotiation with any Person conducted prior to the date of this Agreement by the Company or any of its Subsidiaries or any of their respective Representatives with respect to any Takeover Proposal, including by terminating access to any physical or electronic data rooms and requesting that any such Person and its Representatives promptly return or destroy all confidential information concerning the Company and its Subsidiaries furnished by or on behalf of the Company or any of its Subsidiaries (and all analysis and other materials prepared by or on behalf of such Person that contain any such information). Without limiting the foregoing, it is agreed that if any Representative of the Company or any of its Subsidiaries, acting on their behalf, takes any action that would constitute a breach of this Section 5.4, such action shall constitute a breach of this Section 5.4 by the Company.

28.     In addition, Section 7.6 of the Merger Agreement requires Stein Mart to pay a $2,229,000 "termination fee" to Stratosphere in the event this agreement is terminated by Stein Mart and improperly constrains the Company from obtaining a superior offer.

29.     The termination fee trigger includes, under certain circumstances, if Stein Mart or any of its subsidiaries enters into a definitive agreement for or consummates an alternative takeover proposal during the 12-month "tail" period following termination of the merger agreement, or under other certain circumstances.

30.     Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

31.     As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

32.     First, the Proxy omits material information regarding Stein Mart's financial projections.

33.     With respect to Stein Mart's financial projections, the Proxy fails to disclose (i) all line items used to calculate (a) selling, general and administrative expenses, (b) adjusted EBITDA, (c) cashflows from operating activities, and (d) unlevered free cash flow; and (ii) a reconciliation of all non GAAP to GAAP metrics.

34.     The disclosure of projected financial information is material information necessary for Stein Mart stockholders to gain an understanding of the basis for any projections as to the future financial performance of the company.  In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the Company's financial advisors rendered in support of any fairness opinion.

35.     Second, the Proxy omits material information regarding the analysis performed by

the Special Committee's financial advisor PJ Solomon Securities, LLC ("PJS") in connection with the Proposed Transaction.

36. With respect to PJS's *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose the individual multiples and metrics for the companies observed by PJS in the analysis. This information must be disclosed to make the Proxy not materially misleading to Stein Mart stockholders and provide stockholders with full and relevant information in considering how to vote.

37. Indeed, unlike other Proxies for companies in similar transactions, nowhere does PJS set forth the individual multiples and metrics for the companies observed by it in its analysis. To the extent those multiples and metrics may sway shareholders to vote against the merger, they must be included in the Proxy.

38. With respect to PJS's *Selected Precedent Transactions Analyses*, the Proxy fails to disclose the individual multiples and metrics for the transactions observed by PJS in the analyses. This information must be disclosed to make the Proxy not materially misleading to Stein Mart stockholders and provide stockholders with full and relevant information in considering how to vote.

39. With respect to PJS's *Illustrative Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the individual inputs and assumptions underlying the range of discount rates of 9.5% to 11.5%, (ii) the Company's weighted average cost of capital, (iii) PJS's basis for applying a growth rate of 0% to 2.0%. This information must be disclosed to make the Proxy not materially misleading to Stein Mart stockholders and provide stockholders with full and relevant information in considering how to vote.

40. The omission of the above-referenced material information renders the Proxy false, misleading, and deficient for shareholders to make an educated decision in their vote.

41. The above-referenced omitted information, if disclosed, would significantly alter the

7

total mix of material information available to the Company's stockholders.

**CLAIMS FOR RELIEF**

**COUNT I**

**(AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

46. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy. Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

47. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in

concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 5, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*